1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION


UNITED STATES OF AMERICA

    vs.                             CASE NO:   2:04cr97-MHT

WILLIE FATE JONES,

        Defendant.


* * * * * * * * * *

CHANGE OF PLEA HEARING

* * * * * * * * * *

BEFORE THE HONORABLE CHARLES S. COODY, UNITED STATES MAGISTRATE JUDGE, at Montgomery, Alabama, on Friday, July 16, 2004, commencing at 11:06 a.m.

APPEARANCES:

FOR THE GOVERNMENT:      Mr. Terry F. Moorer
                              Assistant United States Attorney
                              OFFICE OF THE UNITED STATES ATTORNEY
                              One Court Square, Suite 201
                              Montgomery, Alabama   36104

FOR THE DEFENDANT:       Mr. Barry E. Teague, Attorney at Law
                              138 Adams Avenue
                              Montgomery, Alabama   36104

Proceedings reported stenographically;
transcript produced by computer.

**2**

1  (The following proceedings were heard before the Honorable
2  Charles S. Coody, United States Magistrate Judge, at
3  Montgomery, Alabama, on Friday, July 16, 2004, commencing
4  at 11:06 a.m.:)
5  (Call to Order of the Court)
6      THE COURT: Mr. Jones, Mr. Teague, if you will come
7  forward to the microphone, please, in front of my courtroom
8  deputy.
9      MR. TEAGUE: Yes, Your Honor.
10     THE COURT: Mr. Jones, previously, you have entered a
11 plea of not guilty to the charges against you. I understand you
12 now desire to change your plea; is that correct?
13     THE DEFENDANT: Yes, Your Honor.
14     THE COURT: For that purpose, you must be placed under
15 oath. Please raise your right hand and be sworn.
16 (The defendant is sworn)
17     THE COURT: Mr. Jones, you now are under oath. And let
18 me remind you that should you answer falsely any of the
19 questions put to you during this proceeding, those answers can
20 later be used against you in a proceeding against you -- a
21 criminal proceeding against you for perjury or for making a
22 false statement. Do you understand that?
23     THE DEFENDANT: Yes, Your Honor.
24     THE COURT: All right. What is your full name?
25     THE DEFENDANT: Willie Fate Jones.

**3**

1      THE COURT: And how old are you, Mr. Jones?
2      THE DEFENDANT: I'm 41 years old.
3      THE COURT: How far have you gone in school?
4      THE DEFENDANT: The eighth grade.
5      THE COURT: All right. Mr. Jones, have you recently
6  been treated for any mental illness or addiction to narcotic
7  drugs of any kind?
8      THE DEFENDANT: I was going to drug rehab out there at
9  CAPS.
10     THE COURT: All right. When was that?
11     THE DEFENDANT: I was -- I was in it when I was locked
12 up. That was this year.
13     THE COURT: All right. And did you successfully
14 complete that program?
15     THE DEFENDANT: No, sir. I was still going.
16     THE COURT: All right. Are you currently under the
17 influence of any drugs, medicine, pills, or alcoholic beverage?
18     THE DEFENDANT: Well, I'm taking my ulcer medicine for
19 my stomach and stuff every day at the -- at the city. And I'm
20 not doing no drugs now since I've been locked up.
21     THE COURT: All right. So only the ulcer medicine?
22     THE DEFENDANT: Yes, sir.
23     THE COURT: All right. Mr. Teague, do you have any
24 doubt about Mr. Jones' competence to enter a plea?
25     MR. TEAGUE: No, Your Honor. He knows what he's

**4**

1  doing. I talked to him for about an hour yesterday and again
2  this morning.
3      Mr. Jones, you're feeling okay today, aren't you?
4      THE DEFENDANT: Yes, sir.
5      MR. TEAGUE: And you understand fully what we're here
6  to do.
7      THE DEFENDANT: Yes, sir.
8      MR. TEAGUE: Why don't you explain to the Judge what
9  we're here to do.
10     THE DEFENDANT: For me to turn my not guilty to guilty.
11     THE COURT: All right.
12     MR. TEAGUE: And you understand that you don't have to
13 do that. That's --
14     THE DEFENDANT: Yes, sir.
15     MR. TEAGUE: Okay. But you have --
16     THE DEFENDANT: I want to.
17     MR. TEAGUE: -- decided it's in your interest, based on
18 everything you and I have discussed.
19     THE DEFENDANT: Yes, sir.
20     MR. TEAGUE: Okay. Excuse me, Your Honor.
21     THE COURT: That's all right. Thank you, Mr. Teague.
22     Mr. Jones, you have the right to have your plea heard
23 by the next higher ranking judge, who is a district judge, but
24 you may consent to my taking your plea this morning. Have you
25 and Mr. Teague talked about that?

**5**

1      THE DEFENDANT: Yes, sir.
2      THE COURT: All right. And do you wish me to take your
3  plea this morning?
4      THE DEFENDANT: Yes, sir.
5      THE COURT: All right. For that purpose, then, I need
6  you to sign this form indicating your consent to my taking your
7  plea. Both you and Mr. Teague need to sign the form that my
8  deputy has handed you.
9      (Mr. Teague and the defendant comply)
10     THE COURT: Do we have the original of the plea
11 agreement?
12     THE CLERK: It's on your -- it's right there.
13     THE COURT: Thank you.
14     Mr. Jones, have you received a copy of the indictment
15 returned against you? That's the written charges.
16     THE DEFENDANT: (Nods head)
17     THE COURT: All right. And have you -- you have
18 received it?
19     THE DEFENDANT: Yes, sir.
20     THE COURT: All right. And have you had an opportunity
21 to read it and to discuss those charges with Mr. Teague?
22     THE DEFENDANT: Yes, sir.
23     THE COURT: And do you understand the charges against
24 you?
25     THE DEFENDANT: Yes, sir.

**Page 6**

THE COURT: All right. Are you fully satisfied with Mr. Teague's representation of you in this case?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Mr. Jones, you and the government have reached a plea agreement. I have the original of that document. I'm turning to page 12, showing that page to you. That appears to be your signature. Is that your signature?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Jones, before signing the plea agreement, did you have an opportunity to read it and to discuss the terms of it with Mr. Teague?

THE DEFENDANT: Yes, sir.

THE COURT: And is this the entire plea agreement that you have with the government, the only agreement that you've got with the government?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And do you understand the terms of the plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Other than this plea agreement, has anyone made any promise to you to get you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Okay. That's fine. I can hear you.

Mr. Jones, under the terms of this plea agreement, you

**Page 7**

are pleading guilty to two counts of the indictment and you and the government are agreeing that a sentence of 135 months will be imposed on you. Mr. Jones, the plea agreement is merely a recommendation to the Court. The Court is not bound to sentence you in accordance with the plea agreement. The Court will review this plea agreement and at a later time decide whether to sentence you in accordance with it. If the Court decides to not follow the plea agreement, you will be notified of that. And then you will have the right to withdraw your guilty plea. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: At that time, Mr. Jones, if you decide to not withdraw your guilty plea, the Court can then impose on you any lawful sentence, even if it is more severe than the sentence recommended in the plea agreement. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Jones, has anyone attempted in any way to force you to plead guilty in this case?

THE DEFENDANT: No, sir.

THE COURT: Mr. Jones, the offenses to which you are pleading guilty are felony offenses. And if your plea is accepted and you are adjudged guilty of those offenses, that adjudication may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm.

**Page 8**

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: The maximum punishment with respect to count one of the indictment, which is the drug conspiracy count, is a term of imprisonment of not less than ten years nor more than life, a fine of not more than $4 million, or both the fine and the imprisonment. Upon release from any imprisonment, you would be subject to a period of supervised release of not less than five years. And you would be required to pay to the Court an assessment fee of $100. Do you understand the maximum punishment?

THE DEFENDANT: Yes, sir.

THE COURT: With regard to the gun count, which is count three, being an ex-felon in possession of a gun, or a weapon, the maximum punishment for that crime is a term of imprisonment of not more than ten years, a fine of not more than $250,000, or both the fine and the imprisonment. Upon release from any imprisonment, you would be subject to a period of supervised release of not more than three years. And on that count, you would be required to pay to the Court an assessment fee in the amount of $100. Do you understand the maximum punishment for that count?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Jones, upon release from any imprisonment and placement on supervised release, if you violate

**Page 9**

the conditions of supervised release, you can be given additional time in prison. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Jones, I've explained to you the consequences of your plea. Do you understand the consequences of entering a guilty plea?

THE DEFENDANT: Yes, sir.

THE COURT: Now, have you and Mr. Teague talked about the sentencing guidelines and how they may apply in your case?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Mr. Jones, parole has been abolished. And if sentenced to a term of imprisonment, which you will be under the terms of this plea agreement, you will not be released on parole. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Jones, under the terms of this plea agreement, you are giving up your right to appeal any sentence imposed on you except in the instance of prosecutorial misconduct or ineffective assistance of counsel. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: That means you will not be able to appeal any sentence imposed on you. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Mr. Jones, you have the right

**Page 10**

to plead not guilty to the charge against you and to persist in that plea. You would then have the right to a trial by jury, at which you would be presumed innocent and the government would be required to prove your guilt beyond a reasonable doubt. At that trial, you would have the right to the assistance of counsel for your defense, the right to see and hear all witnesses and have them cross-examined in your defense, and you would have the right on your own part to decline to testify unless you voluntarily elected to do so in your defense. And you would have the right to issue subpoenas to compel witnesses to come to court to testify in your defense. Mr. Jones, do you understand your right to a trial and the other rights that I've just mentioned to you?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Jones, at that trial, if you decided to not testify or to not put on any evidence, those facts could not be used against you. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Jones, by entering a plea of guilty, you are giving up your right to a trial and the other rights I have mentioned to you. There will be no trial of any kind. And based solely on your plea of guilty, the Court will find you guilty and later impose sentence on you. Do you understand that?

THE DEFENDANT: Yes, sir.

**Page 11**

THE COURT: Mr. Jones, you are entering a guilty plea to count one and count three of the indictment. Count one of the indictment charges you with a drug conspiracy. At a trial, the government would be required to prove beyond a reasonable doubt that you and at least one other person in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan, as set forth in the indictment, and that you, knowing the unlawful purpose of the plan, willfully joined in it. Do you understand what the government would be required to prove at a trial before you could be convicted of that charge?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: You sure?

THE DEFENDANT: (Nods head)

THE COURT: Count three, the second count to which you are entering a guilty plea, is a count charging you with being a felon in possession of a gun. The government would be required to prove at trial that you previously had been convicted by a court of a crime punishable by imprisonment for a term exceeding one year and that after that conviction, you possessed a firearm which had traveled in interstate or foreign commerce and that your civil right to possess a firearm had not been restored. Do you understand what the government would be required to prove

**Page 12**

beyond a reasonable doubt to convict you of that crime?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Before I can accept your plea, I must be satisfied that there is a sufficient factual basis for it.

Who wishes to ask Mr. Jones some questions to establish that factual basis?

MR. TEAGUE: If I could.

MR. MOORER: Sure.

MR. TEAGUE: In the beginning of what we call the conspiracy period we've discussed here, Mr. Jones, you came -- you knew a man who was down from the area in Crenshaw County where you had grown up by the name of Lamont Jones; is that correct?

THE DEFENDANT: Yes, sir.

MR. TEAGUE: He was not a relative of yours, was he?

THE DEFENDANT: No, sir.

MR. TEAGUE: Okay. You knew him to be a, so to speak, big-time drug dealer?

THE DEFENDANT: Yes, sir.

MR. TEAGUE: Who had lots of quantities that he could sell?

THE DEFENDANT: Yes, sir.

MR. TEAGUE: Okay. You acted in a capacity for him. Do you recall what that was?

**Page 13**

THE DEFENDANT: Like one of the guys was telling me, like he had got some drugs from him and didn't pay him. I know the other guy, too, because I used to work for him.

MR. TEAGUE: Okay. Now, that wasn't my question. Do you know what a broker is? Would you go around looking for people to bring to Lamont Jones to buy drugs?

THE DEFENDANT: Uh-huh. Yes, sir.

MR. TEAGUE: Okay. And was Darius Strickland --

THE DEFENDANT: One of them. Yes.

MR. TEAGUE: -- one of those?

THE DEFENDANT: Yes, sir.

MR. TEAGUE: Okay. Now, I believe we went over yesterday -- you have previously testified on behalf of the government --

THE DEFENDANT: Uh-huh.

MR. TEAGUE: -- and acknowledged under oath that you set up two deals between Darius Strickland, who was the purchaser --

THE DEFENDANT: Yes, sir.

MR. TEAGUE: -- with Lamont Jones.

THE DEFENDANT: Yes, sir.

MR. TEAGUE: And how much was purchased each of those two times?

THE DEFENDANT: I think about an ounce, four or something --

**14**

1    MR. TEAGUE: Do you recall testifying that it was two
2  ounces?
3    THE DEFENDANT: Might have been. Yes, sir.
4    MR. TEAGUE: All right. I'm going to bring your
5  attention here now to your testimony at page 7. This would have
6  been in the trial of Brian May and others who were your
7  codefendants. You testified that the first one was for two
8  ounces. And then a few lines down Mr. Moorer asked you some --
9  Mr. Franklin asked you some questions; and you said there had
10 been part of that fronted and he didn't pay, so the second time
11 you had to set it up -- I think that's what you began to tell
12 the Judge, was it not?
13   THE DEFENDANT: Yes, sir.
14   MR. TEAGUE: That Darius didn't pay Lamont all the
15 money. Part of it was fronted, and he didn't pay that. So --
16 but he still needed the cocaine. So he gave you the money. You
17 went down without telling Lamont that Darius was the
18 purchaser --
19   THE DEFENDANT: Uh-huh.
20   MR. TEAGUE: -- and he sold to you, whereas he would
21 not have sold it to him.
22   THE DEFENDANT: That's right.
23   MR. TEAGUE: That made a total of four ounces, didn't
24 it?
25   THE DEFENDANT: Yes, sir.

**15**

1    MR. TEAGUE: Okay. And that happened here -- either
2  here or in Crenshaw County within the Middle District of
3  Alabama?
4    THE DEFENDANT: It was in Montgomery.
5    MR. TEAGUE: You had all the deals set up here?
6    THE DEFENDANT: Yeah.
7    THE COURT: Now, these guys like Darius, they weren't
8  buying it for their use. They were buying it to sell to other
9  people?
10   THE DEFENDANT: Yes, sir.
11   THE COURT: And you knew that's what they were doing?
12   THE DEFENDANT: Yes, sir.
13   THE COURT: Go ahead.
14   MR. TEAGUE: And --
15   MR. MOORER: We're talking about cocaine base, are we
16 not?
17   MR. TEAGUE: Yeah. Crack.
18   THE DEFENDANT: It already was --
19   MR. TEAGUE: Cooked up?
20   THE DEFENDANT: -- cooked up.
21   MR. TEAGUE: Yeah. Now, moving to January -- the
22 indictment alleges January of this year, but I don't think it
23 matters, Judge. He says in February the facts that he is
24 pleading guilty to in count three.
25   I believe you were stopped by a Trooper Keenan; is that

**16**

1  correct?
2    THE DEFENDANT: Yes, sir.
3    MR. TEAGUE: And they could see a blunt that you had in
4  the --
5    THE DEFENDANT: Ashtray.
6    MR. TEAGUE: -- ashtray. They had you get out. And
7  they looked inside, and they saw a pistol in there. You're an
8  ex-felon. You knew you were not supposed to have a pistol; is
9  that correct?
10   THE DEFENDANT: Yes, sir.
11   MR. TEAGUE: Okay. And you don't -- are you -- that
12 pistol had been manufactured in another state and brought into
13 this state, is that correct, not by you, but by somebody?
14   THE DEFENDANT: Yes, sir.
15   MR. TEAGUE: Okay. I believe that's sufficient, Your
16 Honor.
17   MR. MOORER: And you had been previously convicted of a
18 felony offense under state law; that is, an offense for which
19 you could have been imprisoned for more than a year?
20   THE DEFENDANT: Yes, sir.
21   MR. TEAGUE: You had been convicted in Montgomery
22 County here for possession of cocaine; is that correct? You had
23 pled guilty?
24   THE DEFENDANT: Yes, sir.
25   MR. TEAGUE: Okay.

**17**

1    THE COURT: All right. One thing I want you to clear
2  up is the dates of the conspiracy, his actions regarding the
3  conspiracy.
4    MR. TEAGUE: All right.
5    THE COURT: The indictment charges January of '89 to
6  May 17 of '99. That's slightly less than one and a half years.
7    MR. TEAGUE: You had a -- you had a relationship with
8  Lamont Jones wherein you acted as a broker. You understand the
9  term "broker"?
10   THE DEFENDANT: Uh-huh.
11   MR. TEAGUE: You acted for a broker -- as a broker for
12 him for at least the period about early 1990 through the end of
13 the nineties; is that correct?
14   THE DEFENDANT: From '96 to --
15   MR. TEAGUE: '99.
16   THE DEFENDANT: Nine, because I was working with the
17 federals on '98. They came asking me.
18   MR. TEAGUE: Well, it was after that that you became an
19 informant and ended up testifying in the case against --
20   THE DEFENDANT: Yes. Lamont.
21   MR. TEAGUE: -- Brian May and others.
22   THE DEFENDANT: Yes, sir.
23   MR. MOORER: And it was May 17th of '99 when the
24 officers approached you about cooperating? May 17th, 1999, the
25 day you were driving your car and they stopped you?

**18**

1  MR. TEAGUE: That sounds about right.
2  THE DEFENDANT: I don't know if it was '9 or '8,
3  because my baby is four years old -- well, five years old, and
4  she hadn't even been born then. It's been a lot of years.
5  MR. MOORER: Okay.
6  MR. TEAGUE: Well, let me ask you this. If the
7  officers -- it was Detective Les Moore who approached you,
8  right?
9  THE DEFENDANT: Yes, sir.
10  MR. TEAGUE: And you immediately said, I've been
11  waiting for you to come.
12  THE DEFENDANT: Yes, sir.
13  MR. TEAGUE: Because Darius told you he had set you up.
14  THE DEFENDANT: (Nods head)
15  MR. TEAGUE: Okay. So you knew they were coming.
16  THE DEFENDANT: Uh-huh.
17  MR. TEAGUE: And you believe Les Moore to be a truthful
18  man, don't you?
19  THE DEFENDANT: Yes, I do.
20  MR. TEAGUE: If he says in the discovery material here
21  in his memos that it all happened the year the Mr. Moorer was
22  suggesting --
23  MR. MOORER: May 17th, 1999.
24  MR. TEAGUE: -- you wouldn't argue with that, would
25  you?

**19**

1  THE DEFENDANT: No, I wouldn't argue.
2  MR. TEAGUE: Okay.
3  THE COURT: But I think it's clear it happened during
4  the period of time set forth in the indictment.
5  MR. TEAGUE: Yes.
6  THE COURT: Does the government agree that's a
7  sufficient factual basis?
8  MR. MOORER: Yes, Your Honor.
9  THE COURT: All right. Mr. Jones, you have agreed in
10  this plea agreement that a sentence of 135 months will be
11  imposed on you. You have the right, Mr. Jones, to have a jury
12  decide every fact which is relevant to the length of sentence to
13  be imposed on you. And by agreeing to this sentence, you are
14  giving up that right also. Do you understand that?
15  THE DEFENDANT: Yes, Your Honor.
16  THE COURT: And you are agreeing that without a jury
17  verdict the Court may impose, if it agrees with this plea
18  agreement, to impose on you a sentence of 135 months?
19  THE DEFENDANT: Yes, sir.
20  THE COURT: All right. Mr. Jones, I have told you the
21  rights you have and the rights which you give up by entering a
22  guilty plea. Do you still desire to plead guilty to count one
23  and count three of the indictment?
24  THE DEFENDANT: Yes, sir.
25  THE COURT: Mr. Jones, to count one of the indictment,

**20**

1  how do you plead?
2  THE DEFENDANT: Guilty.
3  THE COURT: To count three of the indictment, how do
4  you plead?
5  THE DEFENDANT: Guilty.
6  THE COURT: Mr. Jones, the Court finds that you are
7  fully competent and capable of entering an informed plea and
8  that you are aware of the nature of the charges against you and
9  the consequences of your plea. I find that your plea of guilty
10  is a knowing and voluntary plea supported by an independent
11  basis in fact containing each of the essential elements of the
12  offenses. I will therefore recommend that your plea be accepted
13  and that you be adjudicated guilty of count one and count three
14  of the indictment.
15  Mr. Jones, a date will be set for sentencing at a later
16  time, and you will be notified of that date. Pending
17  sentencing, you will remain in custody.
18  THE DEFENDANT: All right.
19  THE COURT: Anything further, gentlemen?
20  MR. TEAGUE: No, Your Honor.
21  MR. MOORER: Nothing.
22  THE COURT: Thank you. We'll be in recess.
23  (Proceedings concluded at 11:25 a.m.)
24  * * * * * * * * * * *
25

**21**

COURT REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript
from the record of proceedings in the above-entitled matter.
This 18th day of April, 2006.

RISA L. ENTREKIN, RDR, CRR
Official Court Reporter